Cheves, J.
delivered the opinion of the Court.
In this case the defendant was indicted for grand larceny, and found guilty of petit larceny. He now moves for a new trial, on grounds which are resolved into the two following: I. That the verdict was against the weight of evidence; 2. That the indictment being for grand larceny, the verdict of petit larceny was unauthorised. 1. The first question turns entirely on the identity of the prisoner. That the robbery was committed has not been doubted, but the question is, by whom ? The identity of the prisoner is established, if established at all, only by the positive testimony of the prosecutrix; for no other witness has spoken to the point, and I think the cir *30 cumstantial evidence of no weight. The fact that some of the articles were found in Vanderhorst-street, near the kitchen door of Mrs. Wood, * the defendant’s mother, independent of the testimony of the prosecutrix as to the prisoner’s identity, will apply, at least, equally to Mrs. Wood or any other inhabitant of the house; and the place where these articles were found was a public street, round the nearest corner to the place where the robbery was committed, which any other perpetrator of the act would have naturally turned. The declaration of the prosecutrix that the family of Mrs. Wood had formed a plot to rob her, is the mere imagination of the witness. She founds it on no fact or circumstance ; and the declaration attributed to the mother, that her son was a thief, and that the prosecutrix should beware of him, is repugnant to the idea of such a plot, and is unnatural and incredible in itself. The circumstance of the axe, which I believe is the only remaining one, is doubtfully established, and attaches no more suspicion to the prisoner than to any other person who may have been resident in the house of Mrs. Wood. The question then, as already said, turns entirely on the positive declaration of the prosecutrix, that the prisoner committed the robbery. The prisoner is before us, and we cannot look at him without seriously doubting the fact, fie was then only seventeen years of age; his appearance would even now indicate *31 much greater youth. He is far from being athletic, and there is no character of energy or enterprise about him; and the allegation is, that he singly and unaided broke open the window of the store, forced. open the bolt with so much violence as to extract the nails by which it was fastened, entered the store alone, and bore away the box of valuables which was the subject of the larceny. Such a case, when charged on such a person, ought to be established by very satisfactory proof, and I do not think this was done at the trial. The testimony of the prosecutrix is intrinsically, in my opinion, very questionable. It is necessary to believe that she could in a house almost entirely closed, by moon light, in the wane of the moon, recognize with certainty the features of the boy, for she says expressly her recognition of him was from his face. Her own testimony is, that she saw his face as he was drawing the box out of the window ; that she slept in the back room; that the shutters in the back room were shut, no candle burning, and no part of the house open but the front window, which was small. She says, indeed, that she was in the store when she saw the boy; and it is extraordinary, when she was thus near him, that she did not advance to the window as he fled, and look after him in the street. But independent of these intrinsic difficulties, there are others. In her testimony she states the time to be about the dawn of day, at that season, (20th January,) probably near 6 o’clock; and in her *32 affidavit on lodging the information, she says it was about 3 o’clock. To Solomon Moses, the constable", and Van Nolten, the sergeant ■of the guard, she expressed her belief that the robbery was committed by a negro fellow, and I have been unable from the report of the Judge who tried the cause, to discover any reason for disbelieving their testimony. On the whole, I think the testimony to support the conviction very doubtful in itself, and Strongly contradicted by extrinsic circumstances. But the Jury, it is said, are the proper judges of facts, and have decided the question. They knew the witnesses, heard the testimony from their lips, saw their manner, the expression of their countenances, their hesitation or confidence; and with these and all the other great advantages of viva voce testimony, have found the prisoner guilty. I hold this right of the Jury highly sacred, but not altogether inviolable. I shall seldom feel myself at liberty' to weigh testimony very scrupulously after them. In all cases of acquittal they are properly uncontrollable; but in cases of conviction, I think it will be sometimes the duty of the Court to give the prisoner the advantage of another trial. I think the present is such an occasion. Under the peculiar circumstances of this case, the preponderance of testimony being, in my opinion, greatly against the conviction, and the Judge who tried the case, and enjoyed nearly all the advantages of the Jury, being also of that opinion: I am of opinion *33 a new trial ought to be granted. On such trial, neither this opinion nor the previous conviction ought to have, or can have, any influence.
J. B. White, for defendant.
Richardson, Attorney General, contra.
2. The second ground it is unnecessary to notice, though in my opinion it is altogether untenable. I am informed by my brethren, it has been often overruled in our own Courts, and in East's Pleas of the Crown, 2 Vol. p. 778, it is expressly laid down, that “ One indicted of grand larceny, may be convicted and have judgment of petit larceny only.”
Buy and JVoii, Justices, concurred.
Colcock, J. dissented.
Mr. Justice Grimleé was prevented by indisposition from attending during the whole of this term.
Mr. Justice Gantt was absent from the state, by leave of the Legislature.
Mr. Justice Johnson was also absent (detained by the indisposition of his family) during the argument of this and the five succeeding cases.